Clerk, will you call the next case, please? We need to hear an action. Bill 243, Jacqueline Gillett, a count by Grant, Papparella v. City of Princeton and Mercall Tires, I believe, by John Fleming and Daniel Russell. Mr. Papparella. Thank you, Your Honor. Thank you, Mr. Russell, Mr. Fleming. We're here today, Your Honors, with regards to they both relate to the same order, that order being entered on March 11th of 2009 by Judge Hollerick in Bureau County which, granted most for summary judgment, filed by the City of Princeton as well as by Mercall Tire. I will split my argument between the two of them in the order in which I believe my opponents are going to speak to you. So first with regards to the City of Princeton. Our position in this particular matter and our complaint centers around a fall that occurred in July of 2005 when our client was walking down the sidewalk in a northerly direction in Princeton, Illinois, and encountered a metal drawbridge that to her seemed to be unsafe, and if you've seen the photos you can make the determination as well, and she elected to walk around that particular drawbridge towards the roadway, into the roadway, and that's where she fell. The allegations we had against the City of Princeton were that there was a breach of their duty to maintain the sidewalk in a reasonable and safe manner. She's walking along on a sidewalk which is otherwise safe, or appears to be safe, and she encounters this drawbridge which is corroded, there's gaps, slants, it's missing railings, and she makes the decision that that's not a safe way to go, especially after 9 o'clock at night in a dark area. There is case law related to this particular matter, and I disagree with Council's contention with regards to the inapplicability of it, but there's cases such as Thorson talking about a pedestrian who was struck by a motorist while he was walking on a street. In that case, the hazard that this person encountered while walking upon a sidewalk was the City had removed part of the sidewalk for purposes of doing gas lines, I believe, and there was dirt or mud along the roadway there, so your hazard there is mud, and the other cases really center around ice or snow and actions taken by the City with regards to the plowing of the snow or the conditions of the various sidewalks. In all of those cases, the Thorson case, the court indicated that the City must maintain the sidewalks in a reasonably safe manner. You have a plaintiff who encounters a hazard and walks around, as you do in Johnson as well as Jones, and I'll get to those in a moment, and they encounter some sort of hazard in the street, whether it be being hit by a motorist, falling, what have you. The Johnson case was a snow case. The sidewalk was piled and covered with snow. The sidewalk wasn't passable in the plaintiff's, in that case, perception, and it wasn't in a safe condition. Walked around was hit by a car. So the court looks at in that particular matter, reasonable foreseeability. Was it reasonably foreseeable that a plaintiff would leave the sidewalk in that particular area, enter into a roadway when faced with that hazard? And we believe that there is at a minimum questions of material fact based upon the evidence that's been brought out, as well as the emphasis therefrom, whereby a jury could make a decision as to whether or not the city breached their duty and was a proximate cause of the particular incident. Jones versus Rockford, another case, dealing with the unnatural accumulation of ice and snow, where the plaintiff attempts to walk around, and the court held there that where a plaintiff uses due care to avoid a dangerous condition, a cause of action can lie against the city. Here we have this hazard that the plaintiff comes upon. There's questions of fact, I believe, with regards to who actually owns or controls that particular drawbridge, but for purposes of where we're at, the sidewalk we know definitely is owned by the city. The plaintiff testified in her deposition, which is part of the record, that her intention was to walk off onto the gutterway roadway to walk around this hazard and then re-enter the sidewalk on the other side at the time that this particular injury occurred. So there's no doubt that she was a and I don't think it's ever been contested that she that the city doesn't have a duty to maintain a sidewalk or that she was an intended and permitted user of the sidewalks in the area. And we believe that there's certainly questions of fact that the jury can look to which should preclude the granting of motions for summary judgment as it relates to the city. As I indicated, the drawbridge was corroded, it was uneven, it was bent, it was handrail missing, there was pieces of shard metal that were open, that's all can be seen in the photos, and her perception at that time of the night is that it's a dangerous condition. That forces her out to the roadway and we think that the circuit court erred in granting the motion for summary judgment with regards to that particular matter. Now as it relates to Markell, we feel once again the trial court erred in granting summary judgment in that particular matter as well. It is generally accepted that the owner of the property that abuts a public sidewalk is not going to be held liable for injuries that occur on the sidewalk or on the city property. However, there are exceptions. The exceptions discussed in the Thede case as well as other cases indicate those two exceptions are essentially if the defendant was a cause of the particular hazard or a potential cause of the particular hazard as well as if the defendant or abutting property owner had appropriated that particular area for their own use. There's a whole litany of cases along those lines, but as it relates first to the appropriation, that drawbridge was only used to allow access to the basement or the lower garage area of this particular business. It's only operated by Markell employees and when this drawbridge is up, the right of the public to use the sidewalk is completely impeded. Once again, they're forced to a situation where they have to walk out into the street or the thoroughfare to get around that particular condition. The indications are that it's only the use or the appropriation of that particular drawbridge is only incidental to the overall use of the sidewalk. However, when Markell is the only one who controls when the drawbridge goes up and down or for how long it's up or down, we believe there's a question of fact where you can find appropriation in that particular matter and that's something that should be left for a jury. Notwithstanding just the fact that Markell or Markell employees were the only ones who used that particular drawbridge, on top of that what we have is Markell otherwise appropriating it. They're using it, they're the ones who control the up and down, but notwithstanding that, there's other members of the general public who are otherwise using on or using the drawbridge and they're told to get out of that area. And I know defense counsel or the police counsel will indicate that these were children. Well, they were children, but he's still controlling that area. I don't believe there's a distinction as to whether or not that the control of the area is indicated only to adults as opposed to children. He's controlling and he's telling these kids to leave that area. We also have the testimony of Stephen Wright, who was an employee of the city, and his testimony indicated that he had a knowledge and belief that Markell had the control over the bridge, that that's something that he had heard from a former supervisor. And I think when you look at all of these different factors here, we have at a minimum a question of fact as relates to the appropriation aspect of things. Mr. Pecoraro, do we know anything about the circumstances under which the drawbridge came to be installed? Other than the fact that it was installed quite some time ago, I don't believe so. My belief as to why it was installed was to allow for a I can only surmise, I guess, that it was allowed, put in there because of the significant slant of the driveway going down into the basement that they were trying to create a level and even continuous walking path for the sidewalk. And absent the drawbridge, there would be a dangerous slant for people to walk past? I suppose depending on the time of the year or in general, yes. The degree of the slant was approximately 45 degrees, I believe the testimony was. Which is significant especially as we're here in northern Illinois where we have the weather that we have the weather that we had last night and into this morning. Ice and things along those lines. Or I guess water in general. There can certainly be hazards or problems as it relates to that particular slant going into the driveway of a business. And we don't know who owns the drawbridge? The city employees seem to indicate that Markell, and when I say Markell I'm talking about the corporation in general, I think Thomas Sims is the owner but they have the control and they take care of it. The Markell employees indicate that the city controls it, that when the drawbridge was not working some time ago that the city had arranged for a welder to come to make changes and corrections to it. Do we know who put it in? Who put in the drawbridge? We do not know that, Your Honor. Thank you. Additionally, I believe there's questions of fact as it relates to the cause of the dangerous condition itself. The condition of the drawbridge. When you look at the drawbridge, as you've seen in the photos, we have a gap down from the sidewalk on one side. As you're walking from the south to the north, we have corrosion, which is evident on it. It was a dark evening. It was a dark, well it was dark, it was evening time. There was only one light quite some distance behind her so she didn't have much light which she could appreciate the full hazard. But the drawbridge looks dangerous. The question of fact in our mind comes into play because of the fact that Markeller, the units who are raising and lowering this, they control whether or not this drawbridge is closed all the way, whether or not it's partially up. They're the only ones that are using it and I think extended use over a period of time is certainly a reasonable inference as far as the cause of the dangerous condition. Actually they're not the only ones using it because pedestrians are using it all the time unless it's up. That's correct. But they're the ones who are operating it in an up and down manner and controlling essentially the grade of the two different ramps as they come down. I believe with regards to the dangerous condition aspect of it, there's certainly questions of fact there as I indicated and that specifically with regards to the contribution to the deterioration. The dangerous condition that she encounters forces her to the street. It's an area that's appropriated by Markell and it's when she's moving towards the street that she has this fall. And we believe that's an approximate cause issue which as your honors well know is something that's generally determined by a jury within the province of Virginia. So with regards to those varying matters we think of Markell as an abutting property owner would have some liability or at least questions that can be left to a jury to determine whether or not there's liability as it relates to either the appropriation or the cause or contribution of the condition of that drawbridge. And for those reasons as well as the reasons that we indicate in our briefs and throughout the record we believe that with regards to Markell the court erred in granting the motion for summary judgment. With regards to the city of Princeton the court was correct when he initially denied the motion for summary judgment in January of 2009 and then incorrect when he reversed street in March of 2009. Questions? Thank you very much Mr. Paparella. And Mr. Plumbin you are going to speak for eight minutes and Mr. Russell for seven. Is that my understanding? Good morning your honors. Good morning. Mr. Paparella and Mr. Russell it is once again my privilege to address this court. Interestingly enough this court has looked at a case very very similar to this involving the exact same entity back in 1993. Teeman v. City of Princeton. You probably all read that and I know Justice Litton has because he was on the panel in 1993. A mere 17 years. I'm sorry I'm here but the years of the case are of some particular importance here. Our focus issue is an intended and permitted user issue as this court well knows. I want to say this. The facts as regards to the intended and permitted user are not in dispute in this case. Plaintiff admits that. Plaintiff concedes that. They concede that plaintiff was on the curb on the street when she had her fall. They honestly admit that. Judge Hollerick found that in his findings of fact and they don't dispute that. The only question for this court is the duty issue. The immunity issue under 3-102 since 1992 on the Supreme Court of this state as well as the appellate court or courts, however it's looked at and I think it may be as one appellate court has been very consistent in the intended and permitted user rule. The Ramirez case streets are intended for vehicles sidewalks and crosswalks are intended for pedestrians the Supreme Court has in 1992 1993 and 1995 laid down the pretty clear rules I will try to pronounce this case, the name of this case once again the Wojula case or the Wodila case, that's the best John Fleming can do in pronouncing that case. 1992 from the Supreme Court lays out the rules and Curatola v. Niles and Vaughn versus West Frankfurt lay out the particular exceptions that apply. Generally a pedestrian is not a protected person in the street but there are a few exceptions in the crosswalk because that's designated for pedestrians, no question there. When they are directly around their legally parked vehicle they are a protected, intended and permitted person and therefore a protected person and we have none of those exceptions here. In fact none of those exceptions is argued by counsel here. What counsel is trying to do is create a I don't want to use the word misleading because I don't think that's where counsel or plaintiff is trying to go here but they're trying to get us all off of the focus issue and say well if there is a defect on the sidewalk question of fact of whether the bridge is a defect on the sidewalk then that's enough to reverse summary judgment but they ignore the focus issue they ignore the real issue is that she then does enter the street and that's where they must prove that there is some defect that caused the injury and the courts are clear in this state that once she does step on the curb and the street that she no longer becomes an intended and permitted user and there is no more duty owed. With due respect the cases cited by a plaintiff this Thorson case and two of the other cases are old law they are outdated law in the face of the holdings of those cases just cannot stand in the face of the Supreme Court holdings in Wojula Curatola v. Niles and Vaughn v. Frankfurt to say that if you somehow put a person off of the sidewalk into the street that they are generally owed a duty in the street just cannot, they cannot stand anymore in the face of the Supreme Court language so those cases are outdated and this court that brings us back to 1993 again this court faced this question directly in 1993 in Timan v. City of Princeton in a person in an exact same almost identical position as Ms. Guillen and that is leaving the sidewalk to step on the curb in the street, it's unfortunate the curb is curved and it's like any step a person can misstep and hurt themselves it's unfortunate but there is no duty owed there this court has answered the question in Timan v. Princeton and I think the answer remains the same today so we respectfully request this court to affirm as to the City of Princeton Thank you very much Mr. Fromming Mr. Russell Thank you You have more than 7 minutes Mr. Paparella Mr. Fleming On behalf of Markel I would like to first point out that counsel for the plaintiff in this case contends that the only use you read his reply brief and you listen to his argument the only use for opening and closing the drawbridge is to allow ingress and egress for Markel to the basement of Markel's building. The plaintiff claims there's nothing in the area surrounding the drawbridge you'll see this on page 1 of his reply brief that would for any reason necessitate the use for any of the drawbridge for any other purpose and I believe as Justice McDade pointed out in her questions to the contrary if you look at the record in this case the main and primary use for the drawbridge was to serve as a portion of the city's public sidewalk it was used according to the record generally by the general public in the capacity as pedestrians, skateboarders, bicycles, that goes up and down the street from Peru Street to Marion Street and beyond the drawbridge is used regularly on a daily basis and there's a large volume of public traffic using that drawbridge. That's what the record states. This drawbridge provides a span or a bridge as it were to link the south and north edges of those of the pay portion of the sidewalk where it has to traverse a 40 to 45 degree angle driveway sloping from the public street to the basement and it allows pedestrians therefore to be able to cross on that same level otherwise you'd have to go out in the street or you'd have to walk perpendicularly across the slope. The plaintiff in this case... How often does Marquel use that? According to the record it is used for two purposes. The two purposes that it's used for is number one on certain fairly rare occasions a customer will be bringing a vehicle for storage in the basement. The vehicle will then be driven down into the basement left in there and stored. The only other use in the record is on occasions a semi will bring in a load of tires and the tires have to be transported from the semi down to the basement of the building and the only way to get them there is to raise the drawbridge and literally roll the tires down. Other than that the bridge as the record would show is in a down position spanning the driveway and acting as a sidewalk. How often does those things occur do we know? You know there's nothing in the record that would specifically say that so to do anything else other than that would be a guess. One thing that Justice McGade inquired of Attorney Paparella was if they know who built the bridge or anything about the construction of the bridge. The record indicates that nobody has any concept or idea as to precisely when it was built. Nobody knows who built it. Anecdotally, and this is to horse the record, I'm an old man, I'm 65 years old and I remember riding across that bridge on my bicycle. So it's been there a long long time. The point is who built it really isn't relevant. If you read the city of Roberts versus the city of Sterling case, which is a very interesting case and it talks about substructures along a public sidewalk and basically as I understand that case, who built it really doesn't matter. It's part of the public way, it's part of the public walk, it's part of the city's responsibility. We would submit on behalf of Markle there is no evidence in the record to establish either as a matter of fact or as a matter of law an act of appropriation. The only time Markle would use this as we indicated is on rare occasions. The only way that Markle could get access to their basement and you think about it, if you own a piece of private property you've got to have some way to get from the public street across the public sidewalk into your driveway and into your garage. Everybody has that circumstance. If you look at the photographic evidence in the record there's no way Markle can do that other than by having to raise this drawbridge to get down that steep driveway to get access into their basement. To say that the fact that they raised the drawbridge to go in and out on a much less regular basis than would a private owner constitutes appropriation as a matter of either fact or law would be to establish a law by which every time you drive in your driveway every day, I suppose you probably use it more, all of you, than Markle uses it. Is that an act of appropriating the sidewalk or the drawbridge in this case or the portion of the sidewalk that goes across the driveway, is that appropriating it so that you have a duty to maintain it and you do what you do? I would say that's preposterous. And that's the absurdity of the position that the plaintiff is taking in this case. There was no act of appropriation. I wanted to point out just a second here and I think if you look at the Thiede case 143 Illinois Decisions, 110 at 115 where the court there I think fairly well establishes the proposition that an abutting landowner has a right to make reasonable use of his driveway and the portion of the public sidewalk crossed by his driveway for ingress and egress to his property and thus doing that does not appropriate the property. I would also cite to the Rapinski case cited in my brief and the City of Elmhurst case. Both of those cases would establish that proposition. Another really interesting case I want to mention and it's cited in the brief that would address this whole issue of appropriation and I think fairly decisively is an old case. It's King v. Swanson 216 ILAP 294 at page 298. In that case That's in your brief. Yeah, it's in my brief. It's on page 20 I believe. And in that case an adjoining landowner may use the public sidewalk in front of their real estate for loading and unloading of goods, i.e. like our situation of tires, and may as a result obstruct the use of the public sidewalk by the public without constituting an appropriation. To me that resolves the issue. I would also cite to the Rapinski case for that proposition. Finally, the last issue that we somehow or other caused this problem because of raising and lowering it, I would cite to the Rapinski case and I would say that in that case the same argument was made only it involved traffic going in and out of a gas station and over a period of time there was a hole that developed and the theory was, well we can use circumstantial evidence to establish a reasonable inference that the use going in and out of the driveway caused the sidewalk to become defective and that was held as a matter of law to be nothing other than a surmised speculation conjecture and I believe there was a directed verdict in favor of the landowner. In fact, there was a directed verdict in favor of the landowner in that Rapinski case. I would respectfully request that the court read my brief that the court enter an order affirming the denial or the granting of summary judgment and the denial of the existence of a duty on the part of Markel both to the city of Princeton and to the plaintiff. Thank you very much for your indulgence. Thank you Mr. Russell and Mr. Paparella any response? First with regards to the city of Princeton, what they're asking the court to do is to create a situation where essentially they can have their cake and eat it too and what I'm getting at with regards to that is the arguments that they make is that because when she stepped into the street she's now a pedestrian in a street and she's not an intended and permitted user thereof so she cannot sustain a cause of action against the city. But had she gone forward over this drawbridge and fell then the argument would be that she saw this horrible condition in the drawbridge and continued upon it voluntarily and she has contributory negligence in causing her own injuries and it's difficult from my perspective to say that that makes any sense. The dangerous condition is a condition on the sidewalk, not on the street. The plaintiff encounters this particular condition, she recognizes it as a dangerous condition particularly at that time of day and the circumstances that she found it and she requests to go into the street. At that point in time is where she fell. The cases that talk about the intended and permitted users, generally speaking are the Watchdilla case, the Vaughn case, are cases that involve people who are crossing outside of crosswalks, generally jaywalking and I believe Teeman was a jaywalking case as well. Crossing the middle of the block to go across the street to their lawfully parked car. So they're not cases like we have here wherein the city causes the dangerous condition or in its lack of maintenance of its sidewalks in a reasonable and safe way and then forces the plaintiff to the roadway. She's left in a situation where she's forced to encounter this particular hazard. This perceived danger forces her to the roadway as I indicated and once again I would just indicate a review of our briefs and looking at the photos with regards to the condition of that bridge would be reasonable. As to the argument of Mr. Russell as it relates to Markell there is certainly a question of fact as it relates to appropriation. I don't disagree with the fact that the defendant Markell would have the right to use, to raise the bridge for purposes of delivering goods or when they raise that bridge they completely shut off the sidewalk. Nobody can use that area and then they're forced into the street where they're not intended or permitted users of the street as well. The difference here is that Markell is the only one who can raise and lower that job bridge. They control it completely. And notwithstanding that even when the bridge is down they're still controlling it and in that they're telling kids, members of the public that they can't be on it. Get off of that. So there's certainly I would respectfully suggest a reasonable question there of fact material fact for the jury to determine that there was appropriation. With regards to the dangerous condition they're the only ones who are using that bridge for purposes of going up and down and I think it's reasonable that the continued use will cause or contribute to that particular condition. So for those reasons for those stated in our briefs unless your honors have any questions I would ask that you sign. Thank you Mr. Papperell and thank you all for your argument today. We will take this matter under advisement back to you with a written disposition within a short day.